Good morning, Your Honors. My name is Judy Rabinowitz. I represent the appellant, Amadou Diouf, and I'm going to be reserving three minutes for rebuttal. Before I get into the merits of our legal arguments, and I will also address mootness briefly, I want to emphasize what is at stake for my client. Mr. Diouf, who actually is here in the courtroom today, when we brought this case three and a half years ago, he had been locked up for nearly two years without a bond hearing. Fortunately, the district court ordered that he was entitled to a bond hearing, and he was then released on a $5,000 bond. But were it not for that district court's decision, and obviously since then that decision has been reversed and it's what's before this court now, he would still be detained. And that means he could have been detained for a period of over five years. And that's even though the removal order that he's challenging is not a removal order based on criminal grounds, but is based on the fact that he overstayed a student visa. So that means he could have been locked up for five years without a bond hearing only with the administrative custody review that this court found to be inadequate in CASAS. And I just think it's a stark contrast from the cases we've just heard, where all those individuals have been detained for a long time, and we're talking about whether the CASAS hearing they received was adequate, whether they got a transcript, whether there's the proper burden. The custody review procedure that we're talking about here, he didn't even get an interview. We're not talking about a transcript. The burden is on him. So we have none of those, and the only question here is whether the government can lock somebody up for that length of time without a bond hearing with only this kind of procedure. I do want to address mootness very quickly, since I realize that was a question that the court asked us to brief, and two issues. First, although it's true that the government has not taken Mr. Juef back into custody since the district court's order was reversed, the case is not moot because they insist that they have the authority to lock him up at any time for any reason. But isn't that true of a number of aliens who are at large but have been through some part of the process? Yes, it is true, Judge Biafivi, but what's different is that when he brought this case, he was unlawfully detained. Well, that would suggest that the district court had jurisdiction under the habeas statutes because your client was actually in detention. So the question, it seems to me here, is one of mootness rather than jurisdiction, and so the question is why with his release isn't the case now moot? Well, I think that on this issue, if you look at this Court's decision in Rodriguez and also the Supreme Court's decision in Clark v. Martinez, it's fairly conclusive that the fact that the government releases somebody in their own discretion and retains the discretion to lock them up at any time does not create mootness. It means it's a live case. In those cases, hadn't the government released them on some kind of condition? In other words, there was some kind of – it was like a parole or a – Well, that's the same here. I mean, the government – essentially the release is pursuant to the government's discretion that they have released. He's reporting every three months. Okay, well, that's what I want to hear more about. He's reporting every three months. He's reporting every three months, but, you know, even regardless, their position is that they can re-detain him at any point for any reason and that at that point he wouldn't have a bond hearing. He would only be entitled to the custody review. He's not out on bond. He was released on bond and conditions. So the bond is still being held by the government? Yes, that's my understanding. The government can clarify if I'm wrong. Anyway, so this case is not moot. However, the second point I wanted to make is it would be moot. It would be moot if the government would give our client an assurance that it was not going to re-detain him unless the stay was dissolved or he violated his conditions. And that's because if the stay was dissolved, he'd no longer be detained under 1231A6. He'd be detained under a different statute, 1231A2, which covers detention during the removal period. And if he were to violate the conditions, that's a volitional act. And so this Court's case law is clear that a case is not rendered not moot if the possibility of detention is only because the person voluntarily engages in some act. So if the government were prepared to provide that assurance, it would be moot. And I mention this only because in their supplemental brief, the government says they have no present intention to re-detain him unless the stay is lifted or he violates his conditions. But then they make clear they're not ready to make that assurance, that they retain the authority to detain him for any reason regardless. And because of that, the case isn't moot, and that's why my client needs an order from this Court that the government cannot re-detain him without providing him with a bond hearing. And that's really what the issue is in this case. The issue is the right to a bond hearing. And with that, I want to turn to the merits. The question that the panel, the prior panel, remanded to this Court on was whether the due process concerns that this Court found in Casas Castrillon were present to the same extent with Mr. Juth and therefore required the same construction of the statute, namely that the statute requires that for prolonged detention there needs to be a bond hearing. And specifically, the Court asked the district court to look at whether the administrative custody review, which it found inadequate in Casas, was nonetheless adequate here in light of differences between Mr. Juth's situation and Casas. And the three differences that the Court noted were Mr. Juth is not a lawful permanent resident, Mr. Juth is seeking review of a denied motion to reopen rather than direct review of his removal order, and that Mr. Juth had at one point been released on bond. This was during his removal hearing. And then that bond had been canceled when he failed to depart. So our position is that none of these differences diminish the due process concerns in a way that is significantly different from Casas Castrillon, and so therefore it would be the same result. However, even if they did to some extent diminish the due process concerns, our position is that the administrative custody review procedure here is so deficient and the deprivation of liberty so significant that the Court would still need to reach the same result, that this statute does not allow for prolonged detention like Mr. Juth suffered without a bond hearing. So having said that, I'd like to address each of those points in that order. First, I want to address why the lack of lawful permanent resident status doesn't affect this. Then I'm going to address the motion to reopen issue, then briefly the question of why his release on bond and that being canceled doesn't change it, and then finally the issue of the adequacy of the custody review. With respect to lawful permanent resident status, there's two reasons why we say that Mr. Juth's lack of lawful permanent resident status doesn't diminish the due process concerns here. First, because we're talking about the same liberty interest, freedom from physical restraint. And second, because the government's interests aren't any different or any greater in Mr. Juth's case than they are for the people in Mr. Casas and the other people affected by Casas-Castrillon. The purpose of detention under this statute, 1231A6, is the same as the purpose of detention under 1226A. The purpose is to ensure that the individual is available for removal if removal can finally be effectuated, and then secondarily to protect against danger. There is nothing about lawful permanent resident status, the presence of it or the lack of it, that correlates with danger or flight risk. Clearly, the fact that somebody is not a lawful permanent resident doesn't make them more dangerous, and that's clear from Mr. Juth's case. He's not a criminal alien, which is something that the government was emphasizing for all of the previous cases. They're long criminal records. He does not have that kind of a record. He's removable, as I said, for overstaying his student visa. So danger isn't the issue. So the next issue is, is he more of a flight risk because he's not a lawful permanent resident? And again, the factors that go to flight risk don't correlate with lawful permanent resident status. The factors that go to flight risk are ties, likelihood of prevailing, you know, history of fleeing. All of those can be more true of a lawful permanent resident and less true of a non-lawful permanent resident. So lawful permanent resident status does not change the due process concerns that are triggered by Mr. Juth's prolonged detention. Similarly, the same is true when you look at the fact that he's challenging the denial of a motion to reopen rather than direct review. Again, the liberty interest is the same, freedom from physical restraint. Second, the government's interests are also the same. And I know that there's somehow a misconception or a sense that somebody who is pursuing a motion to reopen or a denied motion to reopen is just trying to delay the inevitable. But that's not true. Someone who seeks review of a denial of a motion to reopen can have as meritorious, if not more meritorious a claim than somebody who is seeking direct review of a removal order. It just doesn't ‑‑ it's apples and oranges. I mean, somebody can be seeking review of a removal order on the grounds that they say they're not an aggravated felon. And if they're an aggravated felon, they're deportable. Whereas somebody like Mr. Juth could be saying, you know, I'm not removable because, you know, in his case, I mean, you could say I didn't get ineffective assistance of counsel. There could be somebody else who said I didn't even get notice. It was an in absentia removal order. So the merits of the case are no different. And so that goes to the issue of, again, you know, what are the government's interests? The government's interests here are to ensure that the person is available if removal is ultimately ordered. And so the questions are danger and flight risk. Someone like Mr. Juth is no more dangerous, and somebody who is seeking review of a denied motion to reopen is no more of a flight risk. Again, the factors that you would look at for flight risk are likelihood of success on the merits, ties, history of fleeing. They don't have to do with the posture of the case. The last issue that this Court raised or the Court on remand raised was the fact that Mr. Juth had had a bond hearing and that bond had been canceled. And to be clear, I'm not completely clear what the Court was getting at in remand. It could have been one of two things or both. One, it could have been, oh, see, he's a flight risk. In fact, we don't think that the fact that the bond was canceled because he didn't appear shows he was a flight risk. In fact, this goes to his ineffective assistance of counsel claim. He had been told by his attorney that a motion to reopen had been filed and he didn't have to appear. And notably, this is not a case where he absconded. He did not leave his home. He was at the same home, same address that they sent the notice to and that two years later they came and picked him up. So he was not trying to elude the authorities. So to the extent that that was the issue that the panel was asking that was concerned about, I don't think that makes any difference. To the extent that the panel was concerned, it was saying, look, this is someone who was never subject to mandatory detention. He had a bond hearing in the past, whereas the individuals in CASAS had been subject to mandatory detention. That doesn't seem to be relevant either, because the issue is prolonged detention. It can't be that somebody who suffers prolonged detention now but was never subject to mandatory detention isn't entitled to an adequate procedure or a constitutionally adequate procedure, whereas somebody who was subject to mandatory detention, presumably because Congress thought they were more of a flight risk or more of a danger, gets a more robust procedure. So none of the factors that the court asked the district court to examine. And to be fair, the panel did not – was completely neutral on the question. The panel didn't say, we think the due process concerns are different. The panel simply said, we're going to let the district court decide in the first instance. Are these due process concerns different or should we reach the same result? Our position is that it's the same position. I can't tell. Is this my two minutes for rebuttal that I'm eating into, or is this – Yes, you are. It's running down. Okay. Then I think I'll save the rest of the time for that. Okay. These clocks for counsel's benefit, they run down, but then they run up. And it's too easy to think you're getting – That was just my 12th, my 13th. No, you're not the first. I usually give a little spiel about that. It doesn't do any good. People talk right through it anyways. I give it up. Counsel? Good morning, Your Honors. May it please the Court, Theodore Atkinson. It's my privilege to represent the United States in this manner. Your Honors, the question that is presented to this Court is really, what are the adequate constitutional procedural safeguards that someone in Mr. Duke's position, who has a judicially final order of removal, who has a significant likelihood of removal in the reasonably foreseeable future, what does the Constitution require with regard to their detention? And what the appellant wants is an extension of CASAS into the context of post-final order removal. In the context of a prolonged detention. That is correct. With regards to prolonged detention in the context of a 1231 post-final order situation. Now, did you, just to get you into the mootness issue before we get to the merits, counsel says that if you had framed your response in the briefs differently, you could have mooted the case. That is correct. Not a conscious decision not to disavow intent to re-detain. That is correct, and let me answer that more fully. As we explained in our supplemental brief, really the question and issue is, is the doctrine of voluntary cessation, as an exception to the doctrine of mootness, does that apply here? And what we were clear in pointing out, I think, was that in the case Pickering-Perron decided by this Court, the Court, while leaving open the issue of whether voluntary cessation could apply in a habeas context, said that where the government had provided through a declaration an assurance that it would not re-detain except on certain specified conditions, then it was non-discretionary at that point, and therefore the doctrine of voluntary cessation didn't apply. We are in the position of agreeing with the ACLU in this case that here we cannot give those assurances, given Mr. Juiff's history of, as this Court has recognized, conspiring to evade removal. And what I have been told by my client is that as much as we would like perhaps to moot certain cases by providing assurances, we cannot provide an assurance in this case. The only intention that they have is to re-detain Mr. Juiff at some point in the future to secure his removal, whether that is. I missed the conspiracy to avert removal. I'm sorry. Your Honor, this Court in its previous decision in Juiff had indicated that he had conspired or acted to avoid removal by not appearing for his voluntary departure, by physically resisting his removal. And so those are the factors that I was discussing. So we are in the unfortunate situation where, given Mr. Juiff's history, the government cannot provide an assurance that they will not exercise what everybody agrees is their discretion to re-detain if, in the opinion of DHS, there is a reason to re-detain him to secure his removal. Okay. But how many other aliens are there in the United States that are in a similar status? I don't know the answer to that. If you had somebody that was in Mr. Juiff's status but who had not filed a habeas corpus, would they be able to file a habeas corpus at this point? In other words, if Mr. Juiff had not filed his habeas corpus at a time when he was detained, would he be able to come to this Court or come into a district court at this point and say, the government is likely to re-detain me, and I want to anticipate these problems, and so I want to file for habeas? I understand your question. The answer to that is probably no, because there hasn't been a showing of any of the initial violation to trigger the voluntary cessation. Otherwise, everything could be a case of controversy under Article III. What you have to at least show for the doctrine of voluntary cessation to apply is that there was some act that was ceased. And the standard that was laid down by the Supreme Court is... In habeas, that seems pretty obvious, because the old Latin phrase is, you have the body. And in this case, you don't have the body. He's here in court. He's going to walk out of court today, and he's going to go catch the bus or drive his car or do whatever he does without restraint by the government. That is correct, unless and until the government decides. As it has determined, it will re-detain him. The re-detention cases that I looked at, and I looked at them briefly, suggested that there have to be some other kinds of constraints that the government has imposed. Somebody, for example, has been paroled so that release from custody doesn't move the habeas case if there are significant constraints. Now, Mr. Venowitz has said that it's her understanding that he has to report every three months and that his bond is still being held by the government. Is that your understanding as well? I don't know the answer to that, but I believe that is the case. Okay. Are there any other constraints that the government has imposed on Mr. Duke? No, and, in fact, the order of supervision that governs Mr. Duke's release is what I would characterize as a fairly vanilla order of supervision. It says you have to report every three months, or every, it's either three months or 30 days. Every three months, you can't violate any laws, state, local, or federal laws. You have to comply with, you have to cooperate with the government in seeking your removal. It's a standard order of supervision. Those are conditions for his, conditions, I have to word this carefully because it's important. Those are conditions that he must follow on the terms of his release. They are not the conditions that bind the government from preventing his redetention. In other words, you can go, here's what you must do. There is no next step agreement that if you violate any of these, and only if you violate any of these, the government will redetain. The government maintains its own discretionary authority to revoke that order of supervision at any time, for any reason, in order to secure the purposes for which the revocation would be served, which, in this case, would be to secure him for his removal. The only assurance that I have been provided with by the Department of Homeland Security, after several conversations and pressing them to tell me what their intentions are, their only intention is, we will redetain him at some point. This is a procedurally unusual case. It has gone up and back in a way that is unique to almost every case that we've seen, and at some point, we will redetain him to secure his removal. We don't know if that will be when the stay is lifted, but the mandate hasn't issued. We don't know if it will be because we find out that Mr. Juf has made some efforts to leave the jurisdiction, in a way that raises concerns about his flight risk. Any number of circumstances could arise where DHS determines it needs to redetain him. And so any assurance that we could provide would be no assurance whatsoever. And so, given that fact, we agree with the appellant in this case that the law in this area, with regard to the doctrine of voluntary cessation, and the way that the court has addressed that in Pickering-Perrin specifically, makes it impossible for us to provide an assurance and say that this case is moot as it stands today. If there are no other questions with regard to the issue of mootness, I'll move on to the merits of the case. Again, the appellant seeks an extension of CASAS into this area, and this area being post-final order removal period. Now, I think it's important to understand sort of the case law and statutory framework in determining this case. Probably the three most important cases in approaching this issue is Prado-Romero, CASAS, and then this Court's determination of the district court's previous actions in Juve in 2008. So, Prado, CASAS, and the prior decision in Juve. And what I think all of those cases, when you read them together, highlight and enunciate, is that the procedural due process framework that this Court will approach will depend not just on how long has the individual been in detention, but it will depend on under what statutory scheme are they being detained, what is the purpose of that scheme, and what is the status of the individual. And that is another way of saying you're essentially balancing the interests and the purpose of the statute, the interests of the government as described in the purpose of the statute, with the interests of the alien. It's a fairly standard procedural due process analysis. Is it a Matthews v. Eldridge process or something else? It's something else. I don't think it's Matthews v. Eldridge where, as I understand that case, and that wasn't the case that was predominantly argued in this case, where you have some procedure and you've got to balance that out as to another procedure that would provide greater due process. This is in the same framework of procedural due process analysis as the Court conducted in CASAS and in Prado. It's just that same question applied to the post-final order alien. And what this Court said in Prado and CASAS- Are you denying that there's a liberty interest at stake here? We are not. We are saying that there needs to be, and I think the government would have to concede that, particularly in light of what the Court said in Zadvydas, there is an interest in freedom from physical confinement. But I think what is also important is that the Court cannot accept the appellant's argument that that interest remains the same from the moment an alien arrives in the United States until the moment an alien is placed on the commercial carrier back to their homeland. Throughout immigration law, as a fundamental primary matter, the Supreme Court has said in DeMoor that we treat aliens differently than we would be able to treat citizens of the United States. And throughout immigration law, there is a balancing of the interests of the government as opposed to the interests of the alien at certain stages and proceedings. Aliens who are in the United States but who have not made an entry into the United States have different rights as opposed to an alien who is in the United States lawfully and is a lawful permanent resident. That's the position of the government, that while there is a liberty interest here, it is not the same throughout the entire period of the alien stay if that alien is in removal proceedings and ultimately gets removed. But perhaps that doesn't need to be decided because what this Court can look at is what is the government's interest. And this Court presaged that question in its opinion in Juif. And in Juif, it did not extend CASAS to this proceeding because, as it pointed out, CASAS was limited in its holding to an alien who is in removal proceedings and is a lawful permanent resident. And I think that that was a tacit acknowledgment that the government's interest for aliens who have judicially final orders of removal is going to be different than for those who are in removal proceedings and who are lawful permanent residents. Be careful of tacits. Be careful of tacits? Yes. Okay. I will be careful of tacits. Argue about trying to read the mind or between the lines. Well, here's the argument, then. That question was left open. That much is clear without any tacicity, if that's even a word attached. The question was left open, and here's how that question should be answered. The government's interest is no greater at any point than it is right now with regard to Mr. Juif. There is a judicially final order of removability. He has no challenge, direct challenge, to his removal order remaining. He is not a, and I may be mispronouncing it in this circuit, but he is not a Zavidas alien. There is a significant likelihood that he will be removed in the reasonably foreseeable future. This court recognized that in Juif. He was attempted, the government attempted. Counselor, you're going to run out of time. The argument here is that the motions to reopen are as important, can be as meritorious as some of the direct appeals that are filed. And so there's no correlation, according to counsel, about LPR status or about the nature of the process, that motions to reopen are quite important. I can't remember now, Leonardo, but the cases just before that was, I believe, a motion to reopen, and it was sent back. Why is, you know, and then there goes the judicial final order of removal. Well, this court has said that motions to reopen, the reason that that is the position is because this court has said that is the position. In Prieto-Romero, the court made a distinction between judicially final orders of removal and administratively final orders of removal, and put within the category of exclusion motions to reopen. Right. But, you know, now this case is presenting a case where it's a motion to reopen, and we're focused on the appeals. So all I'm saying is take the case as it unfolds. Okay. So now we have an argument after the district court has considered it. It's now come back to the Ninth Circuit with the district courts weighing in on it. Now the argument in this stage of the proceeding is motions to reopen have status as just as important and significant as a direct appeal, and therefore that should not be a distinguishing factor to offset the liberty interest. It is a distinguishing factor. Forget about whether it's already been decided. We'll have to decide whether one decided that or prejudged it or whatever. What's the government's argument in response to counsel's argument? I see I'm out of time, but if I can answer the question. There are three responses to that without relying on the language of Prieto. First, motions to reopen are disfavored. We point that out in the brief that there is a judicially established point of view that motions to reopen are a disfavored remedy for seeking relief as compared to a challenge to an order of removal. Okay. Number two, the appellant cites statistics that motions to reopen frequently and often lead to overturning of removal orders. And as we point out in our brief, that is not as frequent as appellant points out. The third reason is, and perhaps the most important reason, is that 1231A6 contemplates motions to reopen as part of the process that is undertaken in reaching a point where an alien becomes finally ordered removed. And so if this is a statutory construction issue, I don't think there's any way for the court to escape the conclusion that Congress, in establishing a post-final order scheme, took into consideration not only direct challenges to removal orders, but had to take into contemplation motions to reopen as well. And if there is a demarcation line where the government's interest increases dramatically and the alien's interest is probably at its least, and that demarcation line is when there is a final order of removal, I think under general principles of statutory construction, motions to reopen fall on the side of the demarcation line where Mr. Juist's case is and where those liberty interests and government interests balance out differently. Thank you, Your Honor. I want to address the motion to reopen issue because I think that there's a few things. Motions to reopen are disfavored if they're frivolous, not if they're meritorious. And that's where the issue of the stay comes into play. And we're talking about somebody who's removed from office,   and we're talking about somebody who's removed from office, and that's also a difference in terms of 1231A6. The government says that the government's interest is never higher than when somebody has a final order. But if it's stayed, the interest is the same as for somebody who is seeking direct review and has a stay. That's the question. Can they remove you or are they waiting to find out whether there's going to be a removal order? And so the only interest, the government has not shown why the purpose of detention under 1231A6 is any different than the purpose of detention under 1226A, particularly when you're talking about someone, both cases involve people with final administrative orders. The only reason they're allowed to be here is because they have stays of removal. Let's suppose that we agreed with you that Mr. Duth was entitled to some kind of a CASAS hearing. What's the standard of proof for the government? Well, because, as I was saying, we don't see that the due process concerns are different for somebody like Mr. Duth than like Mr. CASAS, we would say it would be the same as for the CASAS hearing. And I do want to point out... Clear and convincing evidence. Yes. Does it have to be clear? I'd like to answer my question, if you could. Does it have to be clear and convincing evidence of dangerousness to the community and flight risk, or can it be clear and convincing evidence of something else? No, it would have to be danger and flight risk, Your Honor, because the purpose of detention at that point is to ensure availability for removal. It's the same purpose as for somebody who's seeking direct review in CASAS. There's no difference. And the Supreme Court makes this clear in Zedvitus, and I think that it's also clear that the purpose of detention under 1231A6 and under the detention statutes in general is to ensure availability for removal. So we're talking about the same purpose. Is the risk of flight sort of inherently greater for somebody in Mr. Duth's case than it would be for somebody who was in a pure CASAS proceeding? No, Your Honor. Why? Because both individuals are only allowed to be here because they have stays of removal. It all depends on how likely it is that they're going to prevail in their petition for review. The fact that it's a petition for direct review, as opposed to that it's a petition for review of a denied motion to reopen, says nothing about the likelihood of their prevailing. And so there's no inherently greater flight risk for somebody who's seeking review of a denied motion to reopen. They're no closer to being out the door than that person who's seeking direct review. It all has to do with the strength of their case. And then obviously other factors like do they have a history of failure to appear? Do they have ties? Those are the things that go to flight risk, not the fact of what is the status of this. And, again, you have incredibly meritorious claims that are in motions to reopen. You have somebody, as I said, who, you know, is in in absentia order but has an incredibly strong claim that they're going to win, change circumstances in an asylum case in a motion to reopen. So there's nothing inherently less meritorious and less likely to win for somebody who's seeking review of a denied motion to reopen. I see that my time is over. It is. Okay. Again, counsel, thank you. It's a well-argued case, and we appreciate the input. Case is submitted.
judges: Hall, Fisher, Bybee